```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
```

ANTONIO HILL                          :
    Petitioner                        :

    v.                                :    Criminal No. DKC 12-375
                                                     Civil Action No. DKC 16-104
                                               :

UNITED STATES OF AMERICA              :
    Respondent                        :

## MEMORANDUM OPINION

Presently pending and now ready for resolution is Petitioner's amended motion to vacate pursuant to 28 U.S.C. § 2255.[1] (ECF No. 303). An evidentiary hearing was held February 25, 2019, supplemental memoranda have been filed, and no further hearing is necessary. For the following reasons, the motion will be denied and a certificate of appealability will not issue.

Petitioner raises a single issue in his motion, ineffective assistance of counsel, based on the purported failure of his trial counsel, Mr. Steven R. Kiersh, to call a critical witness at the suppression hearing. The background of Petitioner's case was recounted in an earlier opinion, (ECF No. 345), and will not be repeated in full here.

To prevail on an ineffective assistance of counsel claim, a petitioner must first show that "counsel's efforts were objectively unreasonable when measured against prevailing

---

[1] All ECF references are to Criminal No. 12-375.

professional norms." *Frazer v. South Carolina*, 430 F.3d 696, 703 (4th Cir. 2005). In evaluating objective unreasonableness, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[,]" *id.* at 690, but counsel also "has a duty to make reasonable investigations or to make a reasonable decision that [] particular investigations [are] unnecessary," *id.* at 691. In addition, a petitioner must show prejudice, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Id.* at 694.

The issue in this case stems from the suppression hearing held on May 20, 2013. The police officer who conducted the search testified that after they obtained keys from Petitioner's brother, Mr. Dominique Hill ("Dominique"), his partner first attempted a "key turn" using a key. After determining that the key fit, the officer knocked on the door, and Mr. E'Rico Hill ("E'Rico"), Petitioner's brother and co-defendant, opened the door "all the way" which allowed the officer to see drugs and a small child in the apartment. The officer testified that after E'Rico opened the

2

door, E'Rico became belligerent, so the officer detained him. The officer then conducted a protective sweep of the apartment and applied for and obtained a search warrant. (ECF No. 283, at 35-39).

In his habeas motion, Petitioner claims that, prior to filing the motion to suppress, Petitioner and Mr. Kiersh "had conferred with [E'Rico] . . . with respect to having [him] testify" about the search. (ECF No. 303, at 2). E'Rico "indicated to both Petitioner and counsel that he [was] willing to testify" that police opened the door to search the apartment and that he never opened the door. (*Id.*). In his motion, Petitioner contends that the facts are as follows: On June 24, 2011, using a key obtained from one of Petitioner's co-defendants, local police opened the door to an apartment in Maryland. E'Rico and his young son were asleep inside the residence at the time. Police closed the door, then reopened the door and ordered E'Rico to exit the apartment. Police placed E'Rico in handcuffs, brought him back inside the apartment, and then conducted a search finding marijuana and other evidence of drug trafficking. (*Id.*, at 4-5).

Petitioner claimed that he requested that Mr. Kiersh call E'Rico to testify, but Mr. Kiersh refused. (ECF No. 303, at 2). Mr. Kiersh did not call any other witnesses to testify about the search, and, thus, the undisputed evidence was that "somebody

3

open[ed] the door all the way and right in front of [the police was] contraband." (ECF No. 283, at 67).

The Government supplied an affidavit from Mr. Kiersh who denied knowledge of E'Rico's willingness to testify. Because the facts were in dispute, counsel was appointed for Petitioner and an evidentiary hearing held.

At the evidentiary hearing, the court and counsel agreed that, for Petitioner to prevail, he had to prove both that E'Rico had been willing to testify at the suppression hearing that the police, and not he, had physically opened the door to the apartment, *and* that Mr. Kiersh explicitly had been told that in advance of the suppression hearing. (ECF No. 372, at 12-13). E'Rico was not available to testify at the evidentiary hearing, although he supplied a declaration. According to the undisputed facts at the evidentiary hearing, E'Rico was not in any position to tell Mr. Kiersh himself about his available testimony, because he was detained and represented by counsel. Rather, if Mr. Kiersh had been so advised, it had to have been by Petitioner or someone else who had that information. As will be discussed, the court finds that Petitioner has failed to establish that anyone told Mr. Kiersh that E'Rico was willing to testify that he did not physically open the door to the apartment.

In a post hearing supplement, Petitioner now no longer relies on E'Rico's declaration, and no longer intends to call him as a witness in support of the deficient performance prong of his ineffective assistance claim.[2] (ECF No. 375, at 5). Instead, he pivots and now claims that (1) the arguments raised in the motion to suppress lacked merit, and (2) counsel failed to investigate. He still contends that Mr. Kiersh erred by not calling E'Rico as a witness because he was the only eyewitness to the event. Those claims are unavailing. The conduct of Mr. Kiersh with respect to the filing and litigation of the motion to suppress fell within the wide range of conduct expected of competent counsel.

Petitioner and his two brothers were involved in the circumstances addressed at the suppression hearing, each at a different time. Dominique, who had been observed engaging in what law enforcement thought was criminal conduct, was accosted outside the apartment and his key came into possession of the police. It is correct that the suppression motion focused on the use of Dominique's keys to determine which apartment he was seen in. And the motion challenges any thought that Dominique could have given valid consent to search the apartment. There did not appear to be any dispute at the suppression hearing that Dominique voluntarily

---

[2] Mr. Hill reserves the right to call E'Rico as a witness if the court reaches the prejudice prong.

turned over the keys. The potential issue was whether the Government would contend that he also gave consent to a search of the apartment. Dominique was present in order to be able to refute any such contention, but his testimony became unnecessary when the Government disavowed any such contention. Ultimately, the United States Court of Appeals for the Fourth Circuit affirmed Judge Williams' conclusion that the use of the key to identify the apartment (by putting the key in the lock, determining it worked, and removing it) did not constitute a search. *United States v. Hill*, 606 F.App'x 715, 717 (4th Cir. 2015). Thus, how the police came to have the key appears to be immaterial.

Beyond that, Mr. Kiersh wisely concluded that Petitioner might have to establish standing to contest the later search of the apartment and thus brought Petitioner's aunt to the hearing. Judge Williams concluded that enough had been shown to allow Petitioner to contest the later search.

E'Rico was involved in the later search of the apartment. The motion to suppress did not even mention the knock and announce tactic, but did assert that there were no exigent circumstances to justify the warrantless intrusion. In advance of the suppression hearing, it was reasonable for counsel to surmise that the Government might contend that E'Rico had consented to the search, but that did not eventuate either. Rather, the focus was on

6

whether, once the door was opened and contraband smelled and seen, the police were justified in coming in, performing a sweep, and maintaining the status quo while seeking and obtaining a search warrant.

Petitioner has not shown that Mr. Kiersh's conduct before and at the suppression hearing was deficient. Petitioner nevertheless contends that he should have done more to investigate the so-called knock and announce tactic and E'Rico's potential testimony.

Why, however, is it deficient performance to fail to discuss anything with E'Rico's attorney when Mr. Kiersh had no information that the entry into the apartment occurred other than as stated in the police report? Indeed, it is difficult to see how Petitioner can even make this argument when he says he no longer relies on E'Rico's declaration. Without that declaration, there is no evidence that the police, and not E'Rico, physically opened that door. As pointed out by the Government, Petitioner testified at the evidentiary hearing that he learned from E'Rico when E'Rico was released on bail and in response to the question of what happened at the door: "E'Rico told him [Petitioner] that the police walked into the house and that [E'Rico] never let them in." (ECF No. 372, at 34). This is not inconsistent with the police report, or the Government's position that the actual entry was justified by exigent circumstances. Consent to enter and search

7

was not the issue. Petitioner simply has not established that he told Mr. Kiersh that E'Rico did not physically open the door. More importantly, he has not established that there was any reason to investigate, or inquire, of E'Rico (even through his counsel) whether the police report was correct.

Long after the events of the suppression hearing, and guilty plea, Petitioner attempts to put forth a version of events that simply makes little sense. He was actively involved with counsel in advance of the suppression hearing. Had he believed that the police opened the door, he would have made sure that assertion was made. Even Ms. Piner, Petitioner's mother, agreed that there were many meetings and conversations among the brothers and their attorneys. Certainly, if E'Rico contended that the police opened the door, it would have been communicated. Mr. Kiersh had no reason to suspect the police report was incorrect.

Petitioner has not established deficient performance, and it is unnecessary to go further in the analysis of ineffective representation by counsel. The motion to vacate will be denied.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is also required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's

earlier order.  *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Where the court denies petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the claim debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003).  Upon review of the record, the court finds that Petitioner has not satisfied the above standard.  Accordingly, a certificate of appealability will not issue.

    A separate order will follow.

                                                                 /s/
                                    DEBORAH K. CHASANOW
                                    United States District Judge